**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3830
_____

MENDO ROMAN LOVE,
                                        Appellant

v.

U.S. DRUG ENFORCEMENT ADMINISTRATION
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:16-cv-01709)
District Judge:  Honorable David S. Cercone

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 24, 2020

Before:  KRAUSE, MATEY, and ROTH, Circuit Judges

(Opinion filed: March 30, 2021)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Mendo Roman Love appeals pro se from the District Court's order dismissing his motion for the return of property that had been the subject of administrative forfeiture proceedings. For the reasons that follow, we will vacate that dismissal order and remand to the District Court for further proceedings.

I.

In August 2015, Love was arrested by police during a traffic stop in Allegheny County, Pennsylvania. During the stop, the police seized $35,835 from Love. The United States Drug Enforcement Administration ("the DEA") then took control of that currency pursuant to a federal seizure warrant and commenced administrative forfeiture proceedings with respect to that currency. At that time, Love was incarcerated at the Allegheny County Jail ("the ACJ"). In December 2015, the DEA, having received no claim to the currency from Love (or anyone else), declared the currency forfeited.

About a year later, Love filed a pro se motion in the District Court, seeking the return of the currency and arguing that the DEA had "unlawfully taken" it from him. The United States ("the Government"), acting on behalf of the DEA, responded by moving to dismiss Love's motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Government argued that (1) the District Court lacked jurisdiction to review the merits of the DEA's administrative-forfeiture order, see United States v. McGlory, 202 F.3d 664, 670 (3d Cir. 2000) (en banc) ("A district court ordinarily lacks jurisdiction to review the DEA's administrative forfeiture proceedings."), and (2) although the

2

District Court *did* have jurisdiction to review the limited question whether the DEA had met the statutory and due process requirements for providing notice of the forfeiture proceedings to Love, see id., he had not alleged that the DEA failed to meet those requirements. The Government averred that, in September 2015, the DEA had sent, via certified mail, notice of the forfeiture proceedings to Love at the ACJ. Attached to the DEA's motion was a United States Postal Service certified-mail receipt, which showed that an individual by the name of Ron Wilt signed for the mailing on an unidentified date.

Love responded to the Government's motion by alleging that the DEA had violated his due process rights by failing to take adequate steps to notify him of the forfeiture proceedings.[1] He alleged that he had not received the forfeiture notice, and that the DEA's "attempt to send [that notice to him] was inadequate." (Dist. Ct. docket # 11, at 3.) He further alleged that the Government "can not produce any signature of [his] where he signed the legal mail log book that inmates are required to sign when they receive legal mail within the [ACJ]." (Id. at 5.) The Government responded to these new allegations by arguing that due process does not require actual notice of the forfeiture proceedings, and that the manner in which the forfeiture notice was mailed to him at the ACJ satisfied due process. In support of its position, the Government filed an affidavit from Edward Lea, the ACJ's acting mailroom supervisor, regarding the ACJ's procedures

---

[1] Love's response also included a due process challenge to the content of the DEA's forfeiture notice. However, we agree with the Government that he has forfeited that claim by failing to sufficiently raise it in his opening brief. See Geness v. Cox, 902 F.3d 344, 355 (3d Cir. 2018) ("[I]t is well settled that a passing reference to an issue will

3

for receiving and distributing mail during the time period that Love was incarcerated there.[2]

On November 29, 2017, the District Court granted the Government's motion and dismissed Love's motion, with prejudice, for lack of jurisdiction. In doing so, the District Court agreed with the Government that, in light of the mail procedures set forth in Lea's affidavit, the forfeiture notice that was mailed to Love while he was incarcerated at the ACJ complied with due process. This timely appeal followed.[3]

---

not suffice to bring that issue before this court." (internal quotation marks omitted)).

[2] Lea's affidavit averred as follows. Each weekday, a "driver" would pick up inmate mail from the post office and deliver it to the ACJ mailroom. (Dist. Ct. docket # 16-1, at 2.) Wilt, who, as noted above, had signed the return-receipt form acknowledging delivery of Love's forfeiture notice, was one of those drivers. Once inmate mail arrived in the ACJ mailroom, it was divided into "legal mail" and "regular mail." (Id.) "Legal mail sent by certified mail would generally be logged in the ACJ computer system by mailroom staff," while regular mail would not be logged. (Id.) Legal mail would then be picked up by the staff sergeant responsible for the floor on which the inmate in question was housed, and that mail would be opened in front of the inmate by prison staff. As for regular mail, the mailroom staff would give it to "other prison staff" to deliver to the inmate. (Id.)

Lea acknowledged that a search of the ACJ's records did not reveal any mail having been logged for Love. However, Lea averred that "even if a piece of certified mail was inadvertently not logged, it would have been delivered to the inmate in the manner described above." (Id. at 3.) Lea stated that he was "not aware of any requirement that inmates sign for certified mail." (Id.)

[3] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we exercise plenary review over the District Court's order granting the Government's motion to dismiss. See In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012).

The Government has moved to dismiss this appeal for failure to prosecute based on Love's failure to (1) update his address of record following his release from prison

II.

The District Court, viewing the Government's motion to dismiss through the lens of Rule 12(b)(1), concluded that it lacked jurisdiction over Love's motion for return of property. However, the District Court reached that conclusion by effectively addressing *the merits* of Love's inadequate-notice due process claim, a claim over which the District Court indeed had jurisdiction. See McGlory, 202 F.3d at 670. The Government asserts on appeal that the District Court's dismissal on jurisdictional grounds was erroneous, and that Love's due process claim should have instead been viewed through the lens of Rule 12(b)(6). (See Gov't's Suppl. Br. 2 & n.2.) We agree with the Government.

In rejecting Love's due process claim, the District Court relied on Lea's affidavit. But that document is not one that may be considered under Rule 12(b)(6), see Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014), and the District Court did not convert the Government's motion to dismiss to one for summary judgment (nor did the District Court comply with the requirements for effecting such a conversion), see Fagin v. Gilmartin, 432 F.3d 276, 280 (3d Cir. 2005) ("Federal Rule of Civil Procedure 12(b) requires

and (2) comply with our order directing the parties to file supplemental briefing (Love had previously filed both an opening brief and a reply brief). That motion is denied. Although we have the authority to enter such a dismissal, see Fed. R. App. P. 3(a)(2), the Government has not persuaded us that this drastic relief is warranted here. See Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortg. Servs., L.P., 785 F.3d 96, 101 (3d Cir. 2005) (explaining that dismissal under Rule 3 is not favored, and that "the discretion to dismiss a case afforded by Rule 3 should be sparingly used" (internal quotation marks omitted)); see also Horner Equip. Int'l, Inc. v. Seascape Pool Ctr., Inc., 884 F.2d 89, 93 (3d Cir. 1989) (discussing factors that should be evaluated in determining whether to exercise the discretion to dismiss under Rule 3).

conversion from a motion to dismiss to a motion for summary judgment when materials outside the pleadings are considered."); see also Bruni v. City of Pittsburgh, 824 F.3d 353, 361 (3d Cir. 2016) (explaining that a district court may not "convert a motion under Rule 12(b)(6) . . . into a motion for summary judgment unless the court provides notice of its intention to convert the motion and allows an opportunity to submit materials admissible in a summary judgment proceeding or allows a hearing" (ellipses in original) (quoting Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989))).  The Government concedes that "dismissal under Rule 12(b)(6) could not have rested on the Lea affidavit," and that the District Court could not have considered that affidavit without converting the Government's motion to dismiss to a motion for summary judgment.  (Gov't's Suppl. Br. 2-3.)  However, the Government argues that the District Court's failure to convert the motion to dismiss was harmless.

To answer the question of harmlessness in this context, we (1) examine only those documents that may be considered on a motion to dismiss, and (2) determine, on the basis of those documents, whether "there was no set of facts which could be proven to establish [the] defendant['s] liability."  Bruni, 824 F.3d at 362 (quoting Rose, 871 F.2d at 342).  As noted above, Love alleged that he did not receive notice of the administrative forfeiture proceedings while incarcerated in the ACJ, that the Government "can not produce any signature of [his] where he signed the legal mail log book that inmates are required to sign when they receive legal mail within the [ACJ]," and that the DEA's "attempt to send

6

[the forfeiture notice to him] was inadequate." (Dist. Ct. docket # 11, at 3, 5.)[4]  In view of these allegations, we cannot conclude that "there was no set of facts which could be proven to establish [the DEA's] liability."  Bruni, 824 F.3d at 362 (quoting Rose, 871 F.2d at 342); see United States v. One Toshiba Color Television, 213 F.3d 147, 150 (3d Cir. 2000) (en banc) (holding that if the Government wishes to rely on the mail to notify a prisoner of administrative forfeiture proceedings, the Government "bears the burden of demonstrating that procedures at the receiving facility were reasonably calculated to deliver the notice to the intended recipient"); see also Dusenbery v. United States, 534 U.S. 161, 170 (2002) (explaining that the Government is permitted "to defend . . . the constitutional validity of any chosen method [of notice] . . . on the ground that it is in itself reasonably certain to inform those affected" (second set of ellipses in original) (internal quotation marks omitted)).

---

[4] Although Love did not raise these allegations in his motion for return of property—recall that he first raised them in his response to the Government's motion to dismiss—the District Court declined to deem them waived.  (See Dist. Ct. Mem. Order 4-5.)  The Government does not argue that the District Court erred in this regard.  See also Mack v. Warden Loretto FCI, 839 F.3d 286, 291 n.2 (3d Cir. 2016) ("Because Mack proceeded *pro se* up until this appeal, we will also consider his allegations made in response to the defendants' motion to dismiss, which incorporate and are consistent with the allegations in his complaint.").

Because the District Court's erroneous dismissal of Love's due process claim was not harmless, see Bruni, 824 F.3d at 362, we will vacate that dismissal order and remand to the District Court for further proceedings.[5]

---

[5] Nothing in this opinion prevents the Government from relying on Lea's affidavit in a properly filed motion for summary judgment. We take no position on the merits of such a motion. On another note, to the extent that Love asks us to direct the District Court to hold an evidentiary hearing on remand, that request is denied; however, nothing in this opinion is intended to prevent him from directly moving the District Court for that relief. We take no position on the merits of that motion either.